**ANDERSON & KARRENBERG**
Thomas R. Karrenberg (#3726)
Stephen P. Horvat (#6249)
Samantha J. Slark (#10774)
50 West Broadway, Suite #700
Salt Lake City, Utah 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697
tkarrenberg@aklawfirm.com
shorvat@aklawfirm.com

**Counsel for Defendant**

---

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | | |
|---|---|---|
| KENNETH W. GRISWOLD, | ) | **REPLY MEMORANDUM SUPPORTING** |
| | ) | **DEFENDANT's MOTIONS TO STRIKE** |
| | ) | **(i) PORTIONS OF THE DECLARATION** |
| Plaintiff, | ) | **OF KENNETH GRISWOLD and (ii) THE** |
| | ) | **DECLARATION OF PHILLIP** |
| vs. | ) | **FELDMAN** |
| | ) | |
| SNOW, CHRISTENSEN & MARTINEAU, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | | Civil No. 2:08-cv-00197 TC |

---

Defendant Snow Christensen & Martineau ("Snow Christensen") submits this reply

memorandum in support of its (i) Motion to Strike Portions of the Declaration of Kenneth

Griswold, and (ii) Motion to Strike the Declaration of Phillip Feldman.[1]

---

[1] The Motion to Strike the Griswold Declaration was filed as Document 82; the
supporting memorandum is Document 83 and the opposition is Document 94. The Motion to

## INTRODUCTION

Griswold's opposition memorandum has presented no basis for the Court to rule that the challenged testimony is admissible under the Federal Rules of Evidence. Indeed, Griswold barely cites authority or the record at all. Several points raised in Griswold's opposition actually *support* Snow Christensen's motion. Further, it is clear that Griswold's testimony goes far beyond perception-based facts that would be admissible under Rule 56(e) and the Federal Rules of Evidence, and Feldman's testimony is replete with argument, unsubstantiated conclusions, rank speculation, and opinions as to matters that are not within his expertise or otherwise proper under the rules. Snow Christensen's motion to strike should therefore be granted in its entirety.

## ARGUMENT

### I.      GRISWOLD DECLARATION.

#### A.      Paragraphs 6, 8, 10, 16 – Confidentiality of Information.

Griswold fails to cite any authority that would allow admission of Griswold's conclusory testimony about whether certain information was kept confidential, nor does Griswold cite any-thing from his declaration or deposition to lay a proper foundation for the testimony. Instead, Griswold largely argues as follows:

> Contrary to Snow's assertion that Griswold cannot perceive what informa-tion Snow had available, *Griswold is the one individual in this litigation that has personal knowledge of what information he had made available, to what sources such information was made available, and how this information was made available.*

(Griswold Oppo. at 2 (emphasis added).) This sentence does a good job of highlighting the basis for Snow Christensen's objection: that Griswold's declaration utterly <u>fails to identify</u> "what

---

Strike the Feldman Declaration is Document 84, with the supporting memorandum at Document 85 and Griswold's opposition also included in Document 94.

information he had made available, to what sources such information was made available, and how this information was made available." Instead, Griswold keeps that information to himself. His declaration just gives his <u>conclusion</u>, that the information was only available through his file.

The rules of evidence simply do not allow this. A witness is supposed to testify as to basic facts – such as those about what information Griswold made available, and to whom. The parties can then present arguments as to whether it is reasonable to infer from those basic facts that the information was "only available to Snow Christensen and the ASC Parties through my file as Snow Christensen." (Griswold Decl. ¶ 6.) And it is up to the Court to decide whether such an inference would be reasonable. Griswold does not get to decide for himself what inferences can be reasonably drawn.

As explained in Snow Christensen's opening memorandum, conclusory testimony such as this is not admissible. Griswold must testify as to the basic facts. The Court should therefore strike and/or disregard paragraphs 6, 8, 10, and 16 of Griswold's declaration.

**B.      Paragraph 27 – "Slash and Burn" Litigation Tactics.**

Once again, Griswold's opposition perfectly encapsulates the issue: "Griswold declares that ASC party executives told Griswold that they were employing a slash and burn strategy." (Griswold Oppo. at 2.) This, however, is not what Griswold says in his declaration. Instead, Griswold talks about what he "came to believe," and he purports to make a judgment about the strategy the ASC Parties actually employed during the litigation – not just about what he was purportedly told. (Of course, the ASC Parties did not tell him any such thing, though that is not pertinent for this motion.)

If Griswold's testimony were limited to what he heard directly from ASC Party execu-tives – and if it were supported by a proper foundation, including the name of the executive who supposedly told him, and a description of what that person actually said instead of Griswold's interpretation – then perhaps the testimony might be admissible.  But Griswold's testimony is not so limited.  It is therefore improper.

### C.      Paragraph 32 – ASC Party Settlement Offers.

Griswold also asks the Court to accept testimony about his "belief" that the ASC Parties offered less to settle in 2009 than in 2006 or 2007 because the ASC Parties supposedly obtained Griswold's confidential information, with no explanation of the basis for that belief.  Griswold fails to even address Snow Christensen's argument that this testimony is impermissible opinion testimony, or that the testimony is not rationally based on Griswold's own direct perceptions, or that the testimony is not helpful to the trier of fact.  Instead, Griswold simply asserts that he is not required to "affirm the negative."  (Griswold Oppo. at 3.)

Whether Griswold is required to affirm a negative, however, is beside the point.  The point is that if Griswold is going to opine about what caused the ASC Parties to offer less in 2009 than they did earlier, his testimony has to meet all the requirements of Rule 701 set forth in Snow Christensen's opening memorandum – including that the subject must be proper for opinion testimony in the first place.  Griswold has not met *any* of those requirements.

### D.      Paragraphs 34 & 35 – Unnecessary Legal Fees.

Significantly, Griswold does not even address Snow Christensen's objections to the testimony in paragraph 35, where Griswold states that he "believes" Wolf Mountain incurred $1

million in "unnecessary" fees resulting from an "incessant, slash and burn approach." The Court can take that as a concession that the testimony in paragraph 35 is improper.

Griswold *does* attempt to address the objections to paragraph 34, but Griswold still has failed to present any foundation to support his conclusory testimony about Wolf Mountain's legal fees. While Griswold might be in a position to learn what fees Wolf Mountain has incurred in the Canyons litigation, Griswold has not set forth facts showing that he actually *knows* what fees were incurred, or for what legal work. Is Griswold writing the checks to pay the fees? Does he review the bills as they come in? Did he review an accounting summary? His declaration does not say.

Further, Griswold has not set forth facts showing that he has personal knowledge of whether the motion and pleading practice was "substantial" or whether the discovery battles were "significant." Quite frankly, there is *nothing* to back up his testimony.

### E. Paragraphs 39-41 – The "Significantly Different Lawsuit."

Griswold fails to address Snow Christensen's objection that paragraphs 39-41 are nothing more than conclusion and argument. Indeed, Griswold's opposition confirms that instead of testifying about his own perceptions, Griswold is merely presenting argument based on other alleged "evidence" in the record: "For example, the fact that Snow used Griswold's confidential information is found in the deposition testimony of Chris Conabee which is in the record." (Griswold Oppo. at 4.)

Yet again, Griswold's opposition demonstrates exactly why Snow Christensen objects to Griswold's testimony. In its opening memorandum, Snow Christensen objected that because the declaration fails to explain the basis for Griswold's conclusions and opinions, Snow Christensen

and the Court cannot adequately assess the validity of his testimony.  In his opposition memorandum, Griswold now says his testimony is based on documents in the record, such as Chris Conabee's deposition.  But since Griswold is merely presenting conclusions based on reading documents in the record, he is obviously not testifying from his personal knowledge, and the testimony is not admissible as evidence for that reason as well.

Further, Griswold still has provided no basis that would allow Griswold to testify about how things would have been different if Snow Christensen had not allegedly breached its duty of loyalty, or what determinations were made by the ASC Parties' executives (¶ 40).  This testimony is inadmissible as well.

## II.     FELDMAN DECLARATION.

### A.     Feldman's testimony is improper argument and advocacy.

Griswold does not even dispute that a substantial portion of Mr. Feldman's declaration consists of argument and advocacy instead of mere expert opinion.  Instead, Griswold claims that the declaration contains "numerous well reasoned and factually supported opinions" and "[t]he Court is clearly capable of determining if a portion of Feldman's declaration is in fact simple 'argument'."  (Griswold Oppo. at 5.)  But the Court should not be required to sift through the declaration to figure out what is argument and what is proper expert testimony.  (And the onus should not be on Snow Christensen to have to file a motion to strike to bring the issue to the Court's attention.)  Instead, the declaration is supposed to be limited to expert opinion in the first place.  This alone provides a legitimate basis for the Court to strike and/or disregard Mr. Feldman's declaration.

**B.      Mr. Feldman's testimony about subjective intent and motivation is improper.**

Griswold has presented no reason why the Court should allow Mr. Feldman's testimony that John Lund "intentionally" misspelled Griswold's name in running a conflicts check, that Mr. Lund engaged in "chicanery," or as to his other opinions regarding the intent and motivation of Snow Christensen.  Neither of the cases Griswold cites would allow such testimony.  In Green v. Kinney Shoe Corp., 715 F. Supp. 1122 (D.D.C. 1989), the court did not allow any of the experts to testify about subjective motivation, or even suggest that such testimony would be proper.  And Noyes v. Kelly Services, 2007 WL 4287789 (E.D. Cal. Dec. 6, 2007) is far narrower than Griswold lets on.

In Noyes, the plaintiff alleged that the defendant was denied a promotion because she was not a member of the "Fellowship of Friends"; she alleged that the defendant office manager was a member of the Fellowship, and that Fellowship members were favored in promotions.  The court denied a pretrial motion to exclude testimony of an expert on "destructive cults" and "controversial groups and movements," who had specific expertise on the Fellowship.  The expert's testimony was based in part on personal interviews with former Fellowship members and family of Fellowship members, which revealed that members of the Fellowship were "devoted to the point of donating large sums of money to the Fellowship and that support of the Fellowship is seen as a religious obligation."  Id. at *5.  The court allowed the testimony because it addressed "the specialized characteristics of Fellowship members and *not the public at large*."  Id. at *2 (emphasis added).  The court further explained that expert testimony was proper because the Fellowship was a "very small sect[] with specific and unique beliefs and practices not generally

known by the public at large." Id. at *6.  The court left open the possibility, however, that the evidence would be excluded at trial under Rule 403.  Id. at *4.

Noyes is easily distinguishable, because unlike members of obscure religious cults, attorneys do not share "specialized characteristics" that would distinguish them from "the public at large," so as to warrant expert testimony about attorneys' motivations.  Griswold attempts to justify the testimony by arguing that "a lay person can not possibl[y] know the importance of conflict checks at a large law firm such as Snow.  Nor can a lay person possibl[y] know the impact of a potential conflict, or how carefully conflict checks are normally performed."  (Oppo. at 6.)  But the testimony at issue does not address the "importance of conflict checks," the impact of a potential conflict, or how conflict checks are normally performed.  Instead, Mr. Feldman simply asserts, with no basis whatsoever, that Mr. Lund intentionally misspelled Griswold's name on the conflict check.  As well as being pure speculation, this testimony goes far beyond the bounds of permissible testimony by an expert, even a purported expert on an attorney's ethical obligations.[2]

> **C.**     **As Griswold has conceded, Mr. Feldman's testimony about whether certain information was confidential or proper does not constitute "evidence" on that issue.**

Griswold's opposition concedes that "Feldman's declaration is not giving any opinion on whether or not certain information was confidential."  (Oppo. at 7.)  Therefore, none of Mr. Feld-

---

[2] Griswold's attempt to distinguish the Rezulin case fails as well.  Griswold suggests that the expert testimony was disallowed in Rezulin because of difficulties in divining the intent of corporations or entities, but even a cursory reading of Rezulin shows that this is nonsense.  The testimony was rejected because of the inherent impropriety of expert testimony on subjective intent, not because the case dealt with an entity defendant.  See In re Rezulin Prods. Liab. Litig., 309 F. Supp. 2d 531, 545-47 (S.D.N.Y. 2004).  Further, Griswold does not even *address* High-land Capital, Hershey v. Pac. Inv. Mgmt. Co., or the other cases Snow Christensen cited on this issue in its opening memorandum.  (See Snow Christensen Opening Mem. at 2-5.)

man's statements can be relied on as evidence as to whether information was or was not confidential.

Moreover, Griswold states that Mr. Feldman's statements regarding confidential information are based on "Griswold's declaration and the evidence in the record concerning what information was public or what information was confidential." (Id.) As Snow Christensen has established elsewhere, there is no evidence in the record that the information at issue truly was confidential. Accordingly, to the extent Mr. Feldman's testimony assumes that the information was confidential, his testimony is unreliable and inadmissible for that reason as well.

**D.     Mr. Feldman's testimony about use of information in the Canyons litigation is unsupported and inadmissible.**

Griswold's opposition on this issue largely misses the point. As explained in Snow Christensen's opening memorandum, Mr. Feldman's testimony that Snow Christensen "decided to use confidential information obtainable only from Wheeler's file" in the Canyons litigation is improper for a host of reasons. Most significantly, this is not proper for expert testimony. Expert testimony is only admissible if the testimony is based on specialized knowledge, and Griswold has not shown that "specialized knowledge" is required to address this matter. Rather, to prove that confidential information was actually used, Griswold must identify the information and cite the part of the record showing the use of the information. Griswold can then argue that the evidence supports the inference that Snow Christensen actually used information that was only obtainable through the confidential file (and not through public sources like property records and court filings, or through the Park City "grapevine"). But this argument must be in his memorandum; Griswold cannot raise a genuine issue of fact merely by employing an expert to make arguments in a declaration. Griswold does not even address this issue.

Further, even if the subject matter were proper, Griswold has not shown that Mr. Feldman's testimony is proper.  While Mr. Feldman *may* (or may not) be qualified to testify about duties of loyalty or confidentiality, he has not shown that he is qualified to assess whether a particular item of information was actually used or not during the Canyons litigation – and Griswold does not appear to dispute this point.   In addition, Mr. Feldman cannot testify about what information was used in the Canyons litigation because he has admitted that he "did not review evidence dealing with the underlying litigations."  (Feldman Report at 21:14-15.)  His testimony about what information was used in the Canyons cases is simply not proper.

> **E.      Mr. Feldman's testimony about litigation strategies is also unsupported and inadmissible.**

Once again, Griswold does not even address Snow Christensen's objections on this point. Snow Christensen objects to Mr. Feldman's description of the ASC Parties' litigation strategies as "aggressive and high cost," a "squeeze play," or "slash and burn" for several reasons:  the opinions were not disclosed in Mr. Feldman's report, the testimony improperly purports to address subjective motivation and intent, the testimony lacks foundation because Mr. Feldman admitted that he did not review the dockets or files pertaining to the Canyons litigation, and the testimony is impermissibly conclusory.   (See Opening Mem. at 10-13.)   Griswold's only response is to cite one sentence from the report in which Mr. Feldman states that learning certain information about one's litigation adversary "would seem like a Christmas windfall!"  (See Griswold Oppo. at 7-8 (quoting Feldman Report at 22).)  This sentence in Mr. Feldman's report is not enough to constitute a "complete statement" of Mr. Feldman's declaration testimony about how the ASC Parties have actually litigated the Canyons cases, nor does it provide a "basis" for such opinions.

Moreover, even if Griswold could show that Mr. Feldman's testimony about the litigation strategies employed during the complex Canyons matters had been properly disclosed, the other flaws identified in Snow Christensen's opening memorandum remain unaddressed.   The testimony is inadmissible for all of these reasons.

**F.      Mr. Feldman's testimony about the implications of the ASC Parties' settlement offers and strategies is also unsupported and inadmissible.**

Griswold has not even responded to Snow Christensen's argument that Mr. Feldman's testimony about the motivation and/or significance of the ASC Parties' settlement offers.   The Court should take that as an admission that Snow Christensen's objections are valid and that these portions of the declaration are improper and should be disregarded.

**G.      Mr. Feldman's testimony about the implications of the ASC Parties' settlement offers and strategies is also unsupported and inadmissible.**

Similarly, Griswold has not responded to Snow Christensen's objections to Mr. Feldman's testimony in paragraph 3 about the retainer agreement, the legal conclusions and argument in paragraphs 4 and 5, the misleading and inflammatory testimony about Ms. Pettit's deposition testimony (¶¶ 9, 16), the arguments in paragraphs 12 and 13, or the foundationless testimony about the effect of the alleged "squeeze play" in paragraphs 17-19.   This testimony can be deemed improper as well.

## CONCLUSION

A party may not avoid summary judgment by presenting argument as "fact" in a declaration.   Instead, declarations must satisfy the Federal Rules of Evidence, including the requirement that lay testimony be limited to facts derived from personal observation, and that expert testimony be limited to well-reasoned and well-supported opinions with a reliable and logical

- 11 -

foundation.   Neither Griswold nor Mr. Feldman has even tried to comply with these require-

ments.   Instead, the testimony from both witnesses constitutes a mix of facts, conclusions,

argument, and pure speculation, which cannot be used to raise a genuine issue of material fact.

Therefore, Snow Christensen reiterates its request that the Court strike the challenged portions of

the Griswold Declaration and the entire Feldman Declaration and disregard that testimony in

adjudicating Snow Christensen's motion for summary judgment.

     DATED:  July 26, 2010.

                           ANDERSON & KARRENBERG

                 /s/ Stephen P. Horvat
                 Thomas R. Karrenberg
                 Stephen P. Horvat
                 Samantha J. Slark
                 **Counsel for Defendant**