ANDERSON & KARRENBERG
Thomas R. Karrenberg (#3726)
Stephen P. Horvat (#6249)
Samantha J. Slark (#10774)
50 West Broadway, Suite #700
Salt Lake City, Utah 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697
tkarrenberg@aklawfirm.com
shorvat@aklawfirm.com
sslark@aklawfirm.com

*Counsel for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KENNETH W. GRISWOLD, | **MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE PHILLIP FELDMAN** |
| Plaintiff, | |
| vs. | |
| SNOW, CHRISTENSEN & MARTINEAU, | Civil No. 2:08-cv-00197 TC |
| Defendant. | |

Defendant Snow Christensen & Martineau ("Snow Christensen") submits this memorandum in support of its motion to exclude Plaintiff's designated expert witness, Phillip Feldman, from testifying at trial in this matter.

**STATEMENT OF FACTS**

1.  Plaintiff Kenneth Griswold brought this action alleging that Defendant Snow Christensen breached its duties of loyalty and duty of confidentiality when it represented ASC

1

Utah, Inc., and related entities (the "ASC Parties") in litigation against Wolf Mountain, L.C. dealing with the Canyons ski resort and surrounding properties (the "Canyons" litigation).

2. Snow Christensen denies all liability on the ground that (i) its representation of Griswold terminated long before Snow Christensen began representing the ASC Parties in the Canyons matters, as Snow Christensen performed no work for Griswold and had no communication with Griswold for more than six years before Snow Christensen became involved in the Canyons litigation (February 2000 to April 2006), (ii) Snow Christensen did not use or misuse any confidential information for the benefit of the ASC Parties, and (iii) Griswold cannot show that he suffered any harm or damages as a result of any alleged breach of duty.

3. On December 16, 2009, Griswold submitted the expert report of Phillip Feldman, an attorney based in Van Nuys, California. (Docket Entry 47.) The report was in the form of a declaration. Mr. Feldman is Griswold's only designated witness. A copy of Mr. Feldman's report is attached as Exhibit A hereto.

4. On January 27, 2010, Snow Christensen deposed Mr. Feldman. Excerpts from that deposition are attached as Exhibit B.

5. On April 1, 2010, Snow Christensen moved for summary judgment on all of Griswold's claims. Along with Griswold's opposition papers, Griswold filed a declaration from Mr. Feldman. (Docket Entry 68, filed May 21, 2010, Ex. C hereto.)

6. On June 11, 2010, Snow Christensen moved to strike the Feldman Declaration. (See Docket Entry 84 and associated pleadings.) Snow Christensen anticipates that the motion to strike will be addressed at the hearing on Snow Christensen's summary judgment motion, which is set for August 24, 2010.

7.      Snow Christensen now files this Motion in Limine, asking that, if the Court determines that the case must proceed to trial (scheduled to start September 20, 2010), Mr. Feldman's testimony be excluded.

## ARGUMENT

I.   **THE COURT SHOULD EXCLUDE MR. FELDMAN'S PROPOSED TESTIMONY.**

   A.   **Mr. Feldman's proposed testimony is not proper and should not be admitted.**

Under Rule 702, expert opinion testimony is admissible only where such testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Further, an expert's opinion is only admissible if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Id. Expert opinion testimony is inadmissible where it "addresses lay matters which a jury is capable of understanding and deciding without the expert's help." Highland Capital Mgmt. v. Schneider, 379 F. Supp. 2d 461, 468 (S.D.N.Y. 2005) (internal punctuation and citation omitted). Further, where an expert is acting as an advocate, his or her testimony is not admissible. See, e.g., Lippe v. Bairno Corp., 288 B.R. 678 (S.D.N.Y. 2003) ("An expert's role is to assist the trier of fact by providing information and explanations; the expert's role is not to be an advocate.").[1]

---

[1] See also Cacciola v. Selco Balers, Inc., 127 F. Supp. 2d 175, 184 (E.D.N.Y. 2001) ("When expert witnesses become partisans, objectivity is sacrificed to the need to win.") (internal punctuation and citation omitted); In re Rezulin Prods. Liab. Litig., 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) (expert witness may not assume the role of an advocate); Eastern Minerals Intern. v. U.S., 39 Fed. Cl. 621, 627 (Fed. Cl. 1997) (where "testimony and conclusions of [an] expert clearly were designed to mesh with [party's] legal theories" expert's refusal to acknowledge counsel's input was not credible).

Moreover, Daubert and Kumho Tire require trial courts to act as "gatekeepers" when it comes to expert testimony: "A district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony." U.S. v. Rodriguez-Felix, 450 F.3d 1117, 1122 (10th Cir. 2006) (citing Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999)). This requirement is not limited to scientific testimony, but rather applies to all expert testimony. E.g., U.S. v. Lauder, 409 F.3d 1254, 1263 (10th Cir. 2005) (quoting Kumho Tire, 526 U.S. at 141). Among other things, a court must consider factors such as "(1) whether the testimony is relevant; (2) whether it is within the juror's common knowledge and experience; and (3) whether it will usurp the juror's role of evaluating a witness's credibility." Rodriguez-Felix, 450 F.3d at 1123. Further, in carrying out this gatekeeper function, a trial court must make factual findings on the record as to the reliability of the proposed testimony. Dodge v. Cotter Corp., 328 F.3d 1212, 1223 (10th Cir. 2003).

As demonstrated by his report, his deposition testimony, and his declaration, Mr. Feldman's proposed testimony is replete with unsupported opinions, opinions on matters that are not within his expertise, unsubstantiated accusations, and unexplained reasoning. Moreover, it is clear that Mr. Feldman has not even tried to fulfill his proper role as an expert, i.e., applying specialized knowledge or expertise to a particular subject to "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Instead, Mr. Feldman simply advocates for Griswold, presenting pure argument based on what he claims the record shows. This is inappropriate, and as such his testimony should be excluded.

In the following section, Snow Christensen lays out some of the specific opinions Mr. Feldman has presented in his report and deposition and explains why those opinions are not proper under Rule 702. (Unfortunately, due to the disjointed nature of both his report and deposition, it is not possible to go through these opinions in any logical order.) Any testimony on these matters should be excluded. Snow Christensen maintains, however that due to the pervasive nature of these flaws, Mr. Feldman's proposed testimony should be excluded in its entirety.

> B. **Mr. Feldman's proposed testimony suffers from significant and pervasive flaws.**
>
> > 1. **Mr. Feldman may not testify about a supposed "nighttime raid" by John Lund on Griswold's file at Snow Christensen.**

In his deposition, Mr. Feldman opined that John Lund, the lead Snow Christensen attorney in the Canyons litigation, conducted a nighttime raid on Griswold's file at the firm:

> Said in plainer talk, I don't have any doubt that *Mr. Lund personally secretly walked over to file nighttime and took a peek at everything in it long before he ever walked into Wheeler's office*. My opinion of Mr. Lund is straight forward. I told you that.

(Feldman Dep., Ex. B hereto, 71:8-13 (emphasis added).)

Any testimony at trial to this effect would be inadmissible because such testimony is completely unsupported by any factual foundation. For expert testimony to "assist the trier of fact" so as to be admissible under Rule 702, the expert must "be qualified as an expert, . . . have a reasonable factual basis for his testimony, the testimony must be based on reliable methods, and the testimony must be relevant to the facts at issue." E.g., North Star Mut. Ins. Co. v. Zurich Ins. Co., 269 F. Supp. 2d 1140, 1147 (D. Minn. 2003). Here, there is no "reasonable factual basis" for Mr. Feldman's opinion that Mr. Lund snuck into Griswold's file at Snow Christensen

5

one night. In fact, there is no basis at all. At his deposition, Mr. Feldman admitted that he had not talked to anyone who had seen Mr. Lund look at Griswold's file, nor had he read any deposition testimony by someone who said that Mr. Lund looked at the file. (Feldman Dep. at 71:19 – 72:2.) Mr. Feldman has not even cited evidence that Mr. Lund knew that Griswold had been a client of the firm before Mr. Griswold raised the matter in July 2007.

Further, to the extent that Mr. Feldman claims that his belief is based on matters in the record, the testimony still would be inadmissible, as the testimony is not based on any "specialized knowledge" as required by Rule 702. It is well established that purported expert testimony that merely restates or summarizes the record is improper. See, e.g., Highland Capital Mgmt., 379 F. Supp. 2d at 468-69 ("To the extent that O'Shea is simply rehashing otherwise admissible evidence about which he has no personal knowledge, such evidence – taken on its own – is inadmissible. While an expert must of course rely on facts or data in formulating an expert opinion, *an expert cannot be presented to a jury solely for the purpose of constructing a factual narrative based upon record evidence.*" (emphasis added)). There is nothing about Mr. Feldman's purported expertise in legal matters that would make him more qualified than the average juror to determine whether a nighttime raid occurred. Rather, if there is competent evidence of such a raid (which there isn't), Griswold would be required to present that evidence to the jury, and the jury would be capable of drawing whatever conclusions are appropriate.

In short, Mr. Feldman's testimony about the supposed nighttime raid is an unsupported accusation, not a reliable and reasoned opinion based on specialized knowledge and expertise. That testimony is therefore inadmissible.

### 2. Testimony about any alleged failure to obtain "informed consent" is likewise inadmissible.

On a similar note, Mr. Feldman also testified in his deposition that Snow Christensen had failed to obtain Griswold's informed consent to the representation – during the time Mr. Wheeler represented Griswold in 1999-2000 – by supposedly failing to tell Griswold that Snow Christensen would terminate his representation if a bigger client came along seven years later:

> Q.   Okay. You said that Mr. Wheeler breached some duty concerning lack of informed consent?
>
> A.   Yes.
>
> Q.   What are you talking about?
>
> A.   Specifically, not necessarily on the day of being engaged, but *somewhere along the way while representation was active Mr. Wheeler needed to tell his then active client you're a small fish, a very small potato with economic problems.* Our firm is looking for bigger and better. You have an interest in a humongous piece of Utah real estate, which at least some people describe as the resort to end all resorts, *and we want you to know that when mister big bucks comes along, we don't care who his enemies are, we're going to represent him, point one.*
>
> Point two, Mr. Wheeler needed to say, you know, we have management committees and ethics committees that are great businessmen, and for most of what they do they're fine lawyers, *but when it comes to big dollars, they are going to self-deal and do what's best for the firm because in addition to being a profession, law is a business, and we want you to know that in advance.*

(Feldman Dep., Ex. B hereto, 74:12 – 75:9 (emphasis added).)

Once again, this testimony is clearly improper. This is nothing but inflammatory accusations, utterly unsupported by a shred of evidence in the record. Further, none of this is testimony by someone with specialized knowledge that would "assist the trier of fact." Fed. R. Evid. 702.

### 3. Mr. Feldman's proposed testimony that Snow Christensen used Griswold's confidential information is unsupported and improper.

It is difficult to ascertain from his report, but Mr. Feldman appears to opine that while representing the ASC Parties in the Canyons litigation (which began in April 2006), Snow Christensen used confidential information that Mr. Wheeler obtained through representing Griswold in 1999 and 2000. For example, on page 22 of the Report, Feldman states,

> Although no direct evidence reflects communications between ASC principals and their counsel, Snow, *Wheeler's insight and representation does appear to be the sole basis for ASC's principal counsel inquiring about Griswold's taxes in a matter unrelated thereto*.

(Feldman Report, Ex. A hereto, 22:15-18 (emphasis added).)

Mr. Feldman presents no basis for this opinion either. As pointed out in Snow Christensen's summary judgment motion, both Mr. Lund and Ms. Pettit testified that they learned about Griswold's tax problems from a private investigator hired by Mr. Daniel Alberstone, a California-based attorney representing the ASC Parties. Further, Griswold's tax problems were disclosed by public records available online, including both the Summit County Recorder's web site and the state court XChange system. Yet Mr. Feldman's report does not even consider these possibilities. Instead, he simply assumes, without evidence, that Snow Christensen wrongfully obtained and misused information from Griswold's file. This is improper. See, e.g., General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

Moreover, this testimony, like the matters discussed above, goes beyond any expertise Mr. Feldman claims to have. Rather, whether the Snow Christensen attorneys handling the Can-

yons litigation actually obtained and actually used confidential information are questions for the Court and the jury. Any evidence Griswold believes he has on those issues must be presented directly, not filtered through the testimony of a purported expert.[2]

### 4. Mr. Feldman's proposed testimony that Snow Christensen breached its duty of loyalty is similarly inadmissible.

Additionally, Mr. Feldman is unable to competently testify that Snow Christensen breached its duty of loyalty. Mr. Feldman states as much in his report, but once again, he fails to present an adequate basis for this conclusion. While his report does not clarify the basis of this conclusion, Mr. Feldman's opinion appears to be based on the theory that Snow Christensen chose to terminate its relationship with Griswold in favor of the ASC Parties, because the ASC Parties were more lucrative. (See, e.g., Feldman Report at 24:19-20 ("It is patent that the sole motivation to terminate the relationship in 2007 was that it cluttered Snow's relation with Griswold's adversary who Griswold refers to as Snow's 'cash cow.'"); see also id. at 23:23-27 ("In plain English, it is expert's view that the Snow firm self-dealt, that is they permitted their self interest to interfere with their independent judgement."); id. at 24:10-16 (discussing the "hot potato" doctrine).)

This testimony is improper for many reasons, including the fact that as explained in more detail in Snow Christensen's motion to strike Mr. Feldman's declaration, expert testimony

---

[2] On a related note, the Court should also reject any testimony by Mr. Feldman to the effect that the IRS considered Griswold a "scofflaw." (See, e.g., Feldman Report at 22:12-15.) Once again, Mr. Feldman provides absolutely no explanation or justification for this opinion, nor does he identify the facts or documents on which this opinion is based. Indeed, the record shows that Mr. Wheeler forwarded Griswold's tax returns to the state and federal tax authorities in January 2000, and that was the end of it – the authorities accepted those returns and did not proceed with any criminal or civil claims. Thus, there is no basis to conclude that as of the time the Canyons litigation was proceeding from 2006 on, Griswold was considered a scofflaw based on the matters handled by Mr. Wheeler, which dealt with the returns for 1992-1998.

regarding subjective motivation or intent is not proper. Mr. Feldman is not qualified to read minds, and to the extent he is drawing inferences from evidence in the record, he is not "assisting" the trier of fact, but instead usurping them. See Mem. Supp. Def.'s Mot. to Strike Decl. of Phillip Feldman (Docket Entry 85), filed June 11, 2010, at 2-5.

Further, there *is* no evidence that Snow Christensen dropped Griswold in favor of the ASC Parties, let alone as to the motivation for doing so. Rather, it is undisputed that Snow Christensen had no communications or dealings with Griswold at all after Mr. Wheeler completed his work early in 2000, and as such the relationship had long been terminated before Snow Christensen represented the ASC Parties against Wolf Mountain in April 2006. Once again, Mr. Feldman's opinion is nothing but speculation.

> 5. **Mr. Feldman may not testify that any alleged breach of fiduciary duty by Snow Christensen proximately caused harm to Griswold.**

Mr. Feldman opines in his report that Snow Christensen's alleged misuse of Griswold's confidential information caused harm to Griswold as follows:

> But for the identified and known confidences revealed and the never to be identified but obvious conclusions ASC has been able to draw from the Wheeler representation of Griswold, the long, seemingly unending lawsuits between Wolf Mountain and ASC would be less probable.

(Feldman Report at 24:2-4.) The report gives no justification for this conclusion, but based on Mr. Feldman's deposition, Mr. Feldman is apparently arguing that because the Canyons litigation has been extensive, the ASC Parties are taking advantage of Griswold's alleged financial situation: "The volume of litigation suggests to me what I previously testified to that the party with the money, ASCU, is papering the impecunious party, Wolf Mountain and Griswold, and by doing that, getting them to the point where they are squandering all their survival and problem-

solving funds on paying lawyers to defend them in piecemeal litigation ... ." (Feldman Dep., Ex. B hereto, 66:19-25.)

Mr. Feldman, however, admitted that he did not review the records concerning the Canyons litigation. (See, e.g., Feldman Report at 21:14-15 (Feldman "did not review evidence dealing with the 'underlying litigations' at this stage"); Feldman Dep. at 67:14-25 (Feldman lacks "personal knowledge" of the Canyons litigation).) Thus, Mr. Feldman has no basis to draw any reasoned conclusions regarding that litigation. Further, Mr. Feldman admitted that he did not review Wolf Mountain's financial situation (Feldman Dep. at 20:17-20, 24:19-24), that he lacks evidence that Wolf Mountain has been unable to pay its litigation expenses (id. at 68:1-3), and that Wolf Mountain has in fact been contesting the Canyons litigation vigorously (id. at 68:4-10). Thus, Mr. Feldman cannot legitimately testify that any alleged breach of a duty of confidentiality or loyalty proximately caused any harm or damages to Griswold.[3]

## CONCLUSION

Mr. Feldman's report and deposition go far beyond the limits of acceptable expert opinion testimony. Moreover, because the problems are so pervasive and persistent, Snow Christensen submits that the appropriate response is to exclude Mr. Feldman's testimony altogether. Snow Christensen therefore respectfully requests that the Court exercise its "gate-

---

[3] In his summary judgment declaration, Feldman purports to testify that Snow Christensen's alleged misuse of Griswold's confidential information was a "substantial factor" in causing the ASC Parties to supposedly offer $30 million less in settlement in 2009 than they did in 2006. (See Feldman Decl., Docket Entry 68, ¶¶ 20-21.) As explained in Snow Christensen's Motion to Strike, such testimony is completely unsupported and is not an "expert" opinion. (See Docket Entry 85 at 14.)

keeper" function as required by Daubert and Kumho Tire and enter an order excluding Mr. Feldman from testifying at trial as to the matters addressed herein and as to any other subjects.[4]

DATED: August 5, 2010.

        ANDERSON & KARRENBERG

        /s/ Stephen P. Horvat
        Thomas R. Karrenberg
        Stephen P. Horvat
        Samantha J. Slark
        **Counsel for Defendant**

---

[4] Snow Christensen also reserves the right to object to any proffered testimony that goes beyond the matters included in Mr. Feldman's report.