ANDERSON & KARRENBERG
Thomas R. Karrenberg (#3726)
Stephen P. Horvat (#6249)
Samantha J. Slark (#10774)
50 West Broadway, Suite #700
Salt Lake City, Utah 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697
tkarrenberg@aklawfirm.com
shorvat@aklawfirm.com
sslark@aklawfirm.com

*Counsel for Defendant*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KENNETH W. GRISWOLD, | **MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EVIDENCE OF DAMAGES AT TRIAL** |
| Plaintiff, | |
| vs. | |
| SNOW, CHRISTENSEN & MARTINEAU, | Civil No. 2:08-cv-00197 TC |
| Defendant. | |

Defendant Snow Christensen & Martineau ("Snow Christensen"), by and through counsel of record, hereby submits its memorandum in support of its Motion in Limine to exclude evidence of Plaintiff's alleged damages at trial.

## RELEVANT FACTS

1.  Plaintiff Kenneth Griswold initiated this action on September 25, 2007, alleging claims for Breach of the Fiduciary Duty of Confidentiality, Breach of the Fiduciary Duty of Loyalty, and seeking Declaratory Relief.  (*See* Complaint.)

2.  On or around October 3, 2008, Plaintiff served his initial disclosures, which failed to include a computation of damages:

> Computation of Damages – **Until discovery is fully completed on the nature and extent of improper disclosure and use of confidential information by SC&M, Griswold is unable to calculate the damages caused by SC&M's breach of fiduciary duty of confidentiality.**
>
> Computation of Damages – **Until discovery is fully completed on the nature and extent of SC&M's involvement in the litigation brought against Wolf Mountain Resorts, LC., Griswold is unable to calculate the damages caused by SC&M's breach of fiduciary duty of loyalty.**
>
> Punitive Damages Award – A potential punitive award against SC&M for its breach of fiduciary duties, should include as a minimum all of the amounts received in billing by SC&M for amounts billed by SC&M to individuals or entities which interests are clearly adverse to Kenneth Griswold.  Until discovery is fully completed on the nature and extent of SC&M's billings, Griswold can not calculate what this minimal amount is.

(*See* Plaintiff Kenneth W. Griswold's Rule 26 Initial Disclosures, Ex. A hereto.)

3.  On November 5, 2008, Snow Christensen served an Interrogatory specifically asking Plaintiff to identify all damages and explain how they were calculated:

> INTERROGATORY NO. 16:   Identify specifically all damages you claim to have suffered as a result of any of the claims contained in your Complaint. Identify specifically:
>
>     a.    How such damages were calculated;
>     b.    All documents which refer or relate in anyway to such damages or the calculations of such damages; and
>     c.    All persons with knowledge of such damages or the calculation of such damages.

2

(*See* Snow Christensen's First Set of Interrogatories to Kenneth W. Griswold, No. 16, Ex. B hereto.)

    4.    Plaintiff responded as follows:

RESPONSE

**a.**    Compensatory Damages – **Until discovery is fully completed on the nature and extent of improper disclosure and use of confidential information by SC&M, Griswold is unable to calculate the damages caused by SC&M's breach of fiduciary duty of confidentiality.**

Punitive Damages – A potential punitive award against SC&M for its breach of fiduciary duties should include as a minimum all of the amounts received in billing by SC&M for amounts billed by SC&M to individuals or entities which interests are clearly adverse to Kenneth Griswold. Until discovery is fully completed on the nature and extent of SC&M's billings, Griswold can not calculate what this minimal amount is.

Emotional Damages – Griswold has suffered from increased stress and anxiety and physical symptoms associated therewith resulting from SC&M's breaches of fiduciary duty.

**b.**    All of the documents produced by SC&M and Griswold in this action, and the pleadings, motions, deposition transcripts, and correspondence generated in the various current cases involving Wolf Mountain Resorts LC., and ASC Utah Inc., the American Ski Company Inc., Blaise Carrig, and Leslie Otten., plus billing records of Wolf Mountain and Griswold attorneys working on the various current cases involving Wolf Mountain Resorts LC., and ASC Utah Inc., the American Skiing Company Inc., Blaise Carrig, and Leslie Otten.

**c.**    Kenneth Griswold, and attorneys identified in response to Interrogatory No. 17 below.

(*See* Plaintiff's Response to Defendant's First Request for Production of Documents [*sic*], No. 16, Ex. C hereto.)

    5.    On August 7, 2009, Snow Christensen served its second set of interrogatories on Griswold and asked him to identify "all ways in which [Griswold had] been harmed or injured or disadvantaged as a result of any alleged breach by SC&M of its fiduciary duty of confidentiality

to [him]," and to identify the harm by describing "the harm caused, the means by which SC&M's alleged misuse of disclosure caused the harm, and the dollar amount in damages [ ] suffered as a result of that harm." (*See* Snow Christensen's Second Set of Interrogatories to Kenneth W. Griswold, No. 4, Ex. D hereto.)

6. Griswold responded with conclusory allegations based on speculation and conjecture:

> RESPONSE: 1) ASCU and ASC have taken a very aggressive, expensive and drawn out approach to litigating against Wolf Mountain Resorts and me because of SC&M's knowledge of my financial situation. As a result, ASCU and ASC have also taken a very personal approach to this litigation, attacking myself personally at every available opportunity. I and Wolf Mountain Resorts have been required to hire numerous additional counsel to deal with the massive amount of litigation that has ensued, and the extensive discovery and motion practice that has resulted. These pre-trial maneuvers have in many ways been designed to cause me and Wolf Mountain to expend significant resources. At the same time, ASCU and ASC has undertaken efforts to limit its payments to me. For example, SC&M is currently threatening to withhold Wolf Mountain Resorts current September 2009 rent payment. It has done this through a number of guises. This is done with full knowledge that these payments are the sole source of income for Wolf Mountain and my primary source of income.
>
> In addition, I suffered significant increased emotional stress as a result of this approach. This has led to increased loss of sleep, irritability in eating, irritability in general, and an extremely high levels [*sic*] of tension in my life since SC&M became involved with ASCU/ASC. **I can only estimate the emotional damages at $25,000**.
>
> **In addition additional pecuniary damages suffered as a result of the breach of confidentiality exceeds $1,000,000 in increased attorney fees from the way that SC&M is litigating based on their knowledge of my financial situation, and $70,000,000 in lost or reduced settlement value of the 060500297 case and in reduced value of a global settlement**. Prior to SC&M's involvement in this case, I was being offered $100,000,000 for my interests in Wolf Mountain/Wolf Mountains interest in the ground lease. Mr. Bistricer made me an offer in 2006 for that amount. Currently, the last global settlement offer made by Mr. Bistricer was $30,000,000. The primary thing that has really changed since that original buy out offer was the involvement of SC&M and [*sic*] the litigation.

4

> During the Peninsula Advisors and Vail negotiations to purchase approximately 80% of my interests in Wolf Mountain Resorts, I was being offered approximately $100,000,000 for this 80% interest in Wolf Mountain and the ground lease. Then, SC&M gets involved with Mr. Bistricer and work to scuttle the deal. Again, SC&M are involved in reducing what is being offered for my ownership interests in Wolf Mountain by over $70,000,000. SC&M has developed and implemented an approach to litigation for ASC and ASCU based on their understanding of my financial situation and the importance of the ASCU rent payments to Wolf Mountain.

(*See* Plaintiff's Initial Response to Snow, Christensen and Martineau's Second Set of Interrogatories, No. 4, Ex. E hereto.)

7.  Snow Christensen asked Griswold the same interrogatory with respect to his breach of loyalty claim. (*See* Snow Christensen's Second Set of Interrogatories to Kenneth W. Griswold, No. 5, Ex. D hereto.)

8.  Once again, Griswold's response was conclusory and speculative:

RESPONSE: SC&M failed to warn me that ASCU and ASC were preparing to file litigation back in the Fall of 2005. At that time, I was in the middle of negotiating with ASCU and ASC over the construction/design of the golf course. ASCU was trying to get me to approve a time extension. SC&M's breach of loyalty allowed me to grant extensions and concessions on the golf course. Had I known that SC&M was hiring a litigation firm to go after me/Wolf Mountain, I would have known that the negotiations over the golf course were not in good faith, and would have been able to protect myself/Wolf Mountain Resorts from the impending litigation. The concessions and extensions that we did negotiate in good faith, were subsequently used against me/Wolf Mountain and directly lead to the complaint filed by ASCU in Summit County Case 060500297, and the complaint filed by Summit County in 060500412. Wolf Mountain Resorts would not have been subject to the 060500412 lawsuit had it not been for SC&M's breach of loyalty to me. Would [*sic*] Mountain Resorts would have faced a significantly different lawsuit in the 060500297 case if it had known that ASCU was not negotiating in good faith over the golf course.

I would have benefited through reduced attorney fees that were incurred in the negotiations itself ($100,000), the elimination of at least one lawsuit (060500412), and the likely elimination/change in the 060500297 case to increase my ability to favorably settle that case on my terms.

5

>Because of the maneuvering that was allowed as a result of SC&M's breach of duty, I suffered increased emotional stress. This has lead [*sic*] to increased loss of sleep, irritability in eating, irritability, and general high levels of tension. **I can only estimate the emotional damages at $25,000. In addition to emotional damages, the pecuniary damages suffered as a result of the breach of loyalty exceeds $1,000,000 in increased attorney fees that could have been avoided if I had been warned and had been able to alter the golf course negotiations with that knowledge, and $70,000,000 lost in reduced settlement value of the 060500297 case. It has also resulted in the loss of over $70,000,000 in settlement value from the Peninsula/Vail transactions.**
>
>This breach of duty of loyalty is also implicated in my prior answers, but as instructed, I have attempted to limit my answer to describe the distinct harm and damages suffered as a result of the breach of loyalty that is not included in the above answers for breach of fiduciary duty of confidentiality. However, it is impossible to distinguish the $70,000,000 loss of settlement value that is implicated in both interrogatory [*sic*] 3 and 4.

(*See* Plaintiff's Initial Response to Snow, Christensen and Martineau's Second Set of Interrogatories, No. 5, Ex. E hereto.)

9. Shortly thereafter, Plaintiff served an amended response to these discovery requests. His responses to Interrogatories 4 and 5 were virtually identical, and certainly did not provide any additional basis for the calculation of damages. (*See* Plaintiff's Amended Response to Snow Christensen's Second Set of Interrogatories Nos. 4 & 5, Ex. F hereto.)

10. Fact discovery closed on October 30, 2009, and expert discovery closed on January 15, 2010.

11. Griswold never supplemented his Initial Disclosures, or submitted a computation of his damages, as required.

12. On April 1, 2010, Snow Christensen filed a motion for summary judgment arguing, among other things, that Griswold could not establish that he had suffered damages

from the alleged breaches of the duties of confidentiality and loyalty.  (*See* Snow Christensen's Mem in Supp. of Mot. for Summ. J, 23-24, 28-29, Docket Entry 49.)

13.     In opposition to that motion, Griswold filed a declaration stating that it was his "belief" that Snow Christensen's representation of the ASC parties had caused him to incur $1,000,000 in additional attorneys' fees, and that the settlement offer made by the ASC parties in 2009 was significantly less that the offers made in 2006 and 2007.  (*See* Decl. of Kenneth Griswold in Opp'n to Def.'s Mot. for Summ. J., ¶¶ 29-41, Docket Entry 69.)

14.     The declaration of Mr. Feldman filed in opposition similarly states that it is "more likely than not" that SC&M's representation of the ASC parties "caused a portion" of the $50,000,000 reduction in settlement offers from 2007 to 2009.  (*See* Decl. of Phillip Feldman in Opp'n to Def.'s Mot. for Summ. J., ¶ 21, Docket Entry 68.)

## ARGUMENT

Snow Christensen seeks an order excluding any and all evidence and testimony relating to Griswold's calculation of damages because Griswold has never provided a specific and complete itemization of damages, as required.  Snow Christensen also seeks exclusion of any reference that Griswold has suffered pecuniary damages in the form of increased attorneys' fees from Snow Christensen's litigation strategy, lost or reduced settlement values, or emotional damages because any testimony on these issues lacks foundation.

### A.     All Evidence and Testimony Regarding the Calculation of Griswold's Damages Should Be Excluded.

Quite simply, Griswold has failed to ever provide a specific identification of his damages and how such damages were calculated.  In his initial disclosures, rather than provide a "computation of each category of damages" as required by the Federal Rules of Civil Procedure,

7

Griswold stated that "until discovery is fully completed . . . Griswold is unable to calculate the damages caused by SC&M's breach." (*See* Plaintiff's Initial Disclosures, Ex. A hereto.) In response to Snow Christensen's first set of interrogatories, which specifically requested an identification of damages and how those damages were calculated, Griswold again responded that "until discovery is fully completed . . . Griswold is unable to calculate the damages caused by SC&M's breach." Fact discovery has long since closed and, to date, Griswold has not supplemented his Initial Disclosures or his Interrogatory response to set forth his computation of damages. Instead, Griswold simply declared that he incurred damages which "exceed $1,000,000 in increased attorney fees" and "$70,000,000 in lost or reduced settlement value." Griswold's declaration provides a few details about alleged settlement negotiations but falls woefully short in providing the information necessary to "compute" damages.

Rule 26(e) of the Federal Rules of Civil Procedure requires a party to supplement its initial disclosures, or its response to an interrogatory, document request or admission, "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . .." Indeed, a party who breaches the duty to disclose may not use the undisclosed material as evidence unless the failure was harmless or substantially justified. *AVX Corp. v. Cabot Corp.*, 252 F.R.D. 70, 78 (D. Mass. 2008). Griswold's failure is neither harmless nor substantially justified.

*AVX* is instructive on this issue. In that case the Court struck the plaintiff's supplemental response to an interrogatory in which it disclosed the computation of its damages. The court found that the supplementation, which occurred long after fact and expert discovery had closed

and after dispositive motions had been filed, was not timely.  In determining whether exclusion of the evidence was the appropriate sanction, the Court weighed the plaintiff's need for the evidence to recover monetary relief against the defendant's ability to defend against the damages claimed, now that it could not challenge and explore the damages claimed through fact and expert discovery.  The Court ultimately determined the evidence should be excluded.

Here, Griswold's failure is even more egregious as he has yet to submit any computations.  Rather than seeking to exclude an untimely discovery response setting forth his calculation of damages, Snow Christensen is seeking an order preventing Griswold from presenting such a computation for the first time at trial.  Clearly, introduction of such last minute and surprise evidence, if allowed, would be highly prejudicial to Snow Christensen — Snow Christensen would be denied the notice it is entitled under the rules of civil procedure, giving it insufficient time to prepare an adequate defense.

> **B.** **Griswold Cannot Testify That He Suffered Pecuniary Damage in Excess of $1,000,000 for Attorney Fees in the Canyons Litigation.**

In addition to being excludable for Griswold's failure to provide a computation of damages, any testimony by Griswold that Wolf Mountain incurred more than $1,000,000 in "increased attorneys' fees" as a result of Snow Christensen's litigation strategy is inadmissible because such testimony lacks foundation, is not within Griswold's expertise, is not based on Griswold's personal perception, and is not helpful to the trier of fact.

To show that he suffered damages for "increased" attorney fees, Griswold must establish that there were in fact excess fees, i.e., he must establish (i) the amount of fees that Wolf Mountain actually – and reasonably – incurred in the Canyons litigation, and (ii) the amount of fees Wolf Mountain *should have* incurred in the Canyons litigation absent the alleged improper

litigation tactics. Griswold must also establish that such excess fees were actually the result of Snow Christensen's litigation tactics, that the tactics were improper, and that the tactics were used because the Snow Christensen attorneys wrongfully obtained Griswold's confidential information and/or because of Snow Christensen's alleged prior representation of Griswold. Finally, Griswold must show that increased fees paid by Wolf Mountain resulted in a particular quantity of damages to Griswold personally. Griswold cannot testify as to any of these matters.

Testimony by Griswold as to the total fees incurred by Wolf Mountain would be improper because Griswold lacks a proper foundation for such testimony. Any testimony about the precise amount of fees incurred in the Canyons litigation would have to be based on billing statements, invoices, or similar documents – but Griswold has not identified or produced any such documents throughout the course of this litigation. Without such invoices, any testimony of the amount of fees Wolf Mountain incurred is improper. *See, e.g., Gorostieta v. Parkinson*, 17 P.3d 1110, 1118, ¶ 36 (Utah 2000) (best evidence rule bars testimony about medical expenses incurred when medical bills themselves were not in evidence); s*ee also Softel, Inc. v. Dragon Med. & Scientific Comm. Ltd*., 891 F. Supp. 935, 945-46 (S.D.N.Y. 1995) (finding "consideration of attorneys' fees [in fixing the amount of punitive damages] requires evidence of actual attorneys' fees.").

Further, expert testimony is required to establish (i) the reasonableness of the fees Wolf Mountain incurred, (ii) the amount of fees Wolf Mountain "should have" incurred in the Canyons litigation, (iii) that such fees resulted from improper or unreasonable litigation tactics, and (iv) that the tactics resulted from a breach of duty by Snow Christensen. Yet Griswold has not designated an expert or submitted a report on these points. Instead, to establish these

10

damages, Griswold appears to be relying on his "belie[f] that at least $1 million [of the fees] was unnecessary and resulted from the incessant, slash and burn approach that the ASC Parties informed me they were going to take to this litigation." (*See, e.g.*, Griswold Decl. ¶ 35.) Griswold's "belief," however, is inadmissible and insufficient.

"An opinion is admissible only if the court determines that an adequate foundation has been established." *KW Plastics et. al v. United States Can Co.*, 131 F. Supp. 2d 1265, 1274 (M.D. Ala. 2001); s*ee also* Fed. R. Evid. 104(b) (district court determines whether an adequate foundation has been established to support a finding of rational perception.) A lay witness testifying to an amount of damages must set forth the basis for that figure. *See, e.g., Kinetico, Inc. v. Independent Ohio Nail Co.*, 482 N.E.2d 1345, 1352 (Ohio Ct. App. 1984) (testimony that company was damaged in the amount of $5,000 in increased office costs was inadmissible where there was no testimony indicating how this $5,000 figure was computed); *KW Plastics*, 131 F. Supp. at 1274 (stating "[a] Rule 701 witness cannot simply assert conclusions; his testimony must rest upon an antecedent predicate and foundation," and finding lay witness's testimony about company's profit margin, cost of production, equipment and labor costs were inadmissible without better foundation). Failure to do so renders the testimony inadmissible.

Moreover, Rule 701 requires lay opinion testimony be limited to subjects that do not require "scientific, technical, or other specialized knowledge," and be "rationally based on the perception of the witness" and "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Fed. R. Evid. 701. Testimony that attorney fees were "unnecessary" or higher than they reasonably should have been, or that litigation tactics were improper or unreasonable, or that the tactics would not have been used absent knowledge of

confidential information requires specialized knowledge of litigation strategies — particularly strategies used in multimillion dollar commercial disputes. This is not a matter of common experience and therefore not a proper subject for lay witness testimony. *See generally* 29 Wright & Gold, Federal Prac. & Proc., Evid., § 6255 at pp. 160-66 (1997) (lay opinion testimony is allowed on matters that ordinary people experience on a regular basis, such as a person's emotional or physical condition, nature and condition of objects, nature of certain commonly witnessed conduct, etc.).

Nor are these opinions rationally based on Griswold's perceptions. "The requirement that lay opinion be based on the perception of the witness imports into Rule 701 the personal knowledge standard of Rule 602." Wright & Gold § 6254, at p. 126. Griswold has not shown – and cannot show – that he has personal knowledge of facts necessary to support any testimony about how much Wolf Mountain would have spent in attorney fees in the Canyons cases if someone other than Snow Christensen had represented the ASC parties. This is nothing but speculation.

Finally, Griswold has produced no documents pertaining to Wolf Mountain's distributions or anything that would support any testimony about how much additional fees paid by Wolf Mountain would result in damages to Griswold personally. Once again, we are left with nothing but Griswold's own unsupported and unsubstantiated conclusions.

In short, there is *nothing* to support Griswold's claim that as a result of Snow Christensen's alleged breaches of fiduciary duty, he suffered damages in the form of increased attorney fees paid by Wolf Mountain in the Canyons litigation. Any testimony in that regard is therefore inadmissible and should not be allowed.

### C. Any Testimony by Griswold That He Has Suffered Damages of $70,000,000 in Lost Settlement Value Should Also Be Excluded.

For similar reasons, any testimony by Griswold or Mr. Feldman that Griswold has been damaged by lost or reduced settlement values is nothing but unsupported speculation. This claim appears to be based solely on the allegation that the ASC Parties made a certain settlement offer in June 2006, another offer in March 2007, and a third offer in 2009 (after ASC Utah had been acquired by new owners). (*See* Griswold Decl. ¶¶ 29-32, Feldman Decl. ¶¶ 20-21.) Griswold appears to argue that because the 2009 offer was less than the 2006 or 2007 offers, this constitutes damages as a result of Snow Christensen's alleged breach of fiduciary duty.

Once again, this is pure speculation. Griswold has absolutely no personal knowledge about why (if it is even true, which is doubtful)[1] the ASC Parties offered less in settlement at one time versus another. There are any number of reasons why settlement offers could change over a three-year period, including changes in the ski industry, changes in the real estate market, changes in the posture of the case, new management's differing attitudes toward settlement or litigation risk, etc. Griswold has no basis to address any of these issues. Further, neither Griswold nor Mr. Feldman has any basis to causally link a change in settlement offers to an alleged breach of fiduciary duty by Snow Christensen. As such, any statements by Griswold or Mr. Feldman on these matters would be inadmissible under Rules 602, 701, and 702.

---

[1] Notably, Griswold has never produced any documents to substantiate any of the settlement offers on which this claim is allegedly based.

      **D.**      **All Evidence and Testimony Relating to Griswold's Claim for Emotional Distress Damages Should Be Excluded Because They Are Not Recoverable, As a Matter of Law.**

All evidence and testimony regarding Griswold's claim for emotional distress damages should also be excluded as irrelevant because these damages are not recoverable in this action. The majority of states that have considered the issue recognize that emotional distress damages are not available in legal malpractice actions based on negligence where, as here, only economic losses are incurred. *See, e.g., Gavend v. Malman*, 946 P.2d 558, 563 (Colo. Ct. App. 1997) (recognizing that a majority of jurisdictions have concluded emotional distress or other non-economic damages resulting solely from pecuniary loss are not recoverable in a legal malpractice action based on negligence and finding no error in trial court's entry of summary judgment as to plaintiff's claims for emotional distress damages); *Epifano v. Schwartz*, 279 A.D. 2d 501, 503 (N.Y. App. Div. 2001) (finding "[d]amages for the intentional infliction of emotional distress are not recoverable in a legal malpractice action"); *Garland v. Roy*, 976 A.2d 940, 948 (Me. 2009) (emotional distress damages not recoverable in legal malpractice claim where loss was purely economic and there was no egregious conduct by the attorney); Restatement (Third) of the Law Governing Lawyers § 53, cmt. g (2000) (recognizing emotional distress damages are generally inappropriate in legal malpractice claims when lawyers conduct causes purely economic loss). Significantly, claim against an attorney for breach of the duties of loyalty and confidentiality is a species of legal malpractice based in negligence, to which this rule applies. *See, e.g., Aller v. Law Office of Carole C. Schrieffer, P.C.*, 140 P.3d 23, 26-27 (Colo. Ct. App. 2005). *Aller* is particularly instructive on this issue.

In *Aller*, the Colorado Court of Appeals concluded that summary judgment was properly granted on a former client's claim against an attorney and a law firm for emotional distress and non-economic damages. *Id*. at 26. In reaching this conclusion, the Court found "a breach of fiduciary duty claim against an attorney for violation of the duties of loyalty and confidentiality is based on a model of negligence" and where, as here, a breach of fiduciary duty claim involves a breach of the attorney's standard of care, there is no need to distinguish it from a legal malpractice suit based on negligence. *Id*. at 28. The Court ultimately concluded that the rule precluding recovery of emotional distress damages in negligent malpractice cases is equally applicable to a claim based on breach of the duties of loyalty and confidentiality:

> [T]he purpose of limiting damages in attorney negligence cases should apply to cases involving breach of fiduciary duty. Litigation inherently causes a client to suffer emotional distress, and to allow damages for such distress would escalate the cost of practicing law.

*Id*.

Like the claim in *Aller*, Griswold's claims for breach of the duties of loyalty and confidentiality are unquestionably based on Snow Christensen's alleged breaches of the standard of care. In addition, the damages claimed, expenditure of attorneys' fees and reduced settlement offers, indisputably involve only economic loss. Accordingly, Griswold cannot recover for emotional distress damages, and all evidence relating to such damages is completely irrelevant and should be excluded.

Further, any claim for emotional distress damages would fail because Griswold cannot show that Snow Christensen's alleged conduct could be "'considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.'" *Bennett v. Jones Waldo Holbrook & McDonough*, 70 P.3d 17, 31, ¶ 63 (Utah 2003) (quoting *Franco v.*

15

*Church of Jesus Christ of Latter-day Saints*, 21 P.3d 198, 206, ¶ 25 (Utah 2001)).  In *Bennett*, the plaintiff alleged that his law firm pursued a misleading scheme to settle a class action lawsuit out from under him, threatened him in numerous ways, pressured him to testify, and harassed him. *See id.* at 30-31, ¶ 62.  The court held that his claim for infliction of emotional distress was properly dismissed because this conduct simply did not meet the demanding standard for emotional distress claims in Utah.  *See id.* at 31-32, ¶¶ 63-66.[2]

Finally, to recover damages for emotional distress, Griswold must show that the distress was "severe," i.e., "the type of distress that no reasonable person could be expected to endure." *E.g.*, *Schuurman v. Shingleton*, 26 P.3d 227, 233-34, ¶ 23-25 (Utah 2001).  In *Schuurman*, the court held that a claim for emotional distress was properly dismissed even though the plaintiff had alleged "severe pain and suffering and emotional distress."  The court noted that the alleged distress "is indistinguishable from that commonly suffered by others when an intimate personal relationship fails."  *Id.* at 233, ¶ 25.  Similarly, Griswold has never presented any evidence suggesting that he has suffered any distress significantly different from the distress people might ordinarily experience when involved in significant litigation.

## **CONCLUSION**

Snow Christensen respectfully requests the Court grant an order precluding all evidence and testimony at trial relating to Griswold's computation of damages because of his failure to produce one.  Snow Christensen also requests an order precluding Griswold from presenting speculative, conclusory and unsupported testimony as to increased attorneys' fees or reduced

---

[2] In *Bennett*, the court was discussing a separate claim for intentional infliction of emotional distress.  But it would be illogical for Griswold to suggest that he could avoid the holding of *Bennett* simply by omitting an intentional infliction claim.

settlement value. Finally, Griswold should be precluded from introducing evidence of emotional distress damages because such damages are not recoverable and, therefore, irrelevant.

DATED: August 5, 2010.

                                    ANDERSON & KARRENBERG

                                    /s/ Stephen P. Horvat
                                    Thomas R. Karrenberg
                                    Stephen P. Horvat
                                    Samantha J. Slark
                                    ***Counsel for Defendant***