ANDERSON & KARRENBERG
Thomas R. Karrenberg (#3726)
Stephen P. Horvat (#6249)
Samantha J. Slark (#10774)
50 West Broadway, Suite #700
Salt Lake City, Utah 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697
tkarrenberg@aklawfirm.com
shorvat@aklawfirm.com
sslark@aklawfirm.com

*Counsel for Defendant*

---

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KENNETH W. GRISWOLD, | **REPLY MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EVIDENCE OF DAMAGES AT TRIAL** |
| Plaintiff, | |
| vs. | |
| SNOW, CHRISTENSEN & MARTINEAU, | Civil No. 2:08-cv-00197 TC |
| Defendant. | |

Defendant Snow Christensen & Martineau ("Snow Christensen") submits its reply memorandum in support of its Motion in Limine to exclude evidence of Plaintiff's alleged damages at trial.

## INTRODUCTION

Griswold's opposition fails to present any basis for Griswold's claims for damages. Even at this late stage of the proceedings, Griswold cannot provide a "computation" of damages – he is still relying on round-number bottom-line estimates for all three categories of damages he seeks, without providing any of the information necessary to actually *compute* damages. Moreover, Griswold has failed to cite authority that would allow him to recover any of his claimed damages, given the lack of competent evidence and/or legal authority to support them. Griswold should therefore be precluded from offering testimony or documentary evidence to support his damages claims.

## ARGUMENT

**A.     Griswold did not provide a computation of his damages.**

The Court can reject Griswold's argument that his vague and conclusory interrogatory answers satisfy his responsibility under Rule 26 to provide a "computation of each category of damages claimed" and to produce the "documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a). Griswold asserts that he satisfied his disclosure obligations by describing his damages in response to Snow Christensen's Second Set of Interrogatories. These interrogatory answers (and Griswold's summary judgment opposition) indicates that Griswold seeks three categories of damages: excess or unnecessary fees incurred by Wolf Mountain in the Canyons litigation, lost settlement value to Wolf Mountain in the Canyons litigation, and emotional distress damages. The interrogatory answer on which he relies, however, does not provide a "computation" for any of these damages.

### 1.     Alleged Excess or Unnecessary Attorney Fees.

Griswold's interrogatory answer does not provide a computation of his damages for attorney fees, just an estimated total: "[A]dditional pecuniary damages suffered as a result of the breach of confidentiality exceeds [*sic*] $1,000,000 in increased attorney fees from the way SC&M is litigating based on their knowledge of my financial situation." (Pl.'s Amended Response to Snow, Christensen & Martineau's Second Set of Interrogatories, Ex. F to Snow Christensen's Opening Memo. (Docket Entry 105-6), at 13.) Griswold does not explain how this number is calculated, nor has Griswold provided the "documents or other evidentiary material" on which this estimate is based. This is simply insufficient under Rule 26.

Griswold claims that he need not produce Wolf Mountain's attorney fee invoices because the invoices are privileged and/or because they would disclose the details of the work Wolf Mountain's lawyers have been doing in the Canyons litigation. Griswold, however, has not produced a privilege log, or even cited any authority holding that the invoices are privileged. Further, to recover fees, Griswold will have to present detailed testimony of precisely what work the attorneys did, why they did it, why that work was reasonable, and how that work is causally linked to a breach of duty by Snow Christensen. Any privilege would be waived as soon as this evidence is presented.

"Defendants cannot conceal [] information from discovery and expect to spring it upon plaintiffs in the midst of trial for the sake of obtaining a tactical advantage in litigation." *Fox v. California Sierra Fin. Svcs.*, 120 F.R.D. 520, 530 (N.D. Cal. 1988). Instead, under Rule 37, a party that fails to disclose certain information before trial may not use that information at trial. Fed. R. Civ. P. 37(c)(1). There is no exception for a claim of privilege. Indeed, it would be

3

grossly unfair for Griswold to be allowed to testify about attorney fees Wolf Mountain supposedly incurred as an element of damages without producing the documents that actually evidence those fees, particularly where the invoices would provide the only means for a successful cross-examination by Snow Christensen. Therefore, if Griswold withholds the attorney fee invoices based on a claim of privilege, Griswold may not testify about the fees those invoices reflect. *See also Duffy v. Currier*, 291 F. Supp. 810, 815 (D. Minn. 1968) ("The court would not tolerate nor indulge a practice whereby a defendant by asserting the privilege against self-incrimination during pre-trial examination and then voluntarily waiving the privilege at the main trial surprised or prejudiced the opposing party.").[1]

Therefore, Griswold has not satisfied his disclosure obligations with respect to this element of damages.

2.     **Alleged Reduced Settlement Value.**

Similarly, Griswold has not provided a computation of damages he has incurred due to the alleged lost settlement value of the Wolf Mountain case, which he attributes (with no basis) to Snow Christensen's representation of ASC Utah after having represented Griswold in 1999. Once again, Griswold asserts that the computation was given in his interrogatory answer. That answer describes the damages incurred for lost settlement value as follows:

> Prior to SC&M's involvement in this case, I was being offered $100,000,000 for my interests in Wolf Mountain/Wolf Mountain's interest in the ground lease. Mr. Bistricer made me an offer in 2006 for that amount. Currently, the last global

---

[1] Griswold claims that he cannot be required to produce invoices and related documents because "Wolf Mountain Resorts holds the privilege." (Griswold Oppo. Mem. at 5.) This is an interesting position for Griswold to take, especially since throughout this litigation, Griswold has claimed that Snow Christensen's duty of loyalty to him personally also runs to Wolf Mountain, and that any losses by Wolf Mountain related to the Canyons litigation are recoverable by himself personally.

settlement offer made by Mr. Bistricer was $30,000,000. The primary thing that has really changed since that original buy out offer was the involvement of SC&M and the litigation.

(Pl.'s Amended Response to Interrogatories, at 13-14.)

Once again, this is not a "computation." To begin with, Griswold does not even specify whether the alleged 2006 buyout offer was for Griswold's interest in Wolf Mountain, or for Wolf Mountain's interest in the ground lease – one cannot calculate damages without knowing this information. Similarly, the interrogatory gives no details about the terms of the "global settlement offer." Further, to compute the value of the respective buyout offers, one would have to know whether the buyout offers were for immediate payment entirely in cash, or whether the payments would have involved some equity and/or debt, or whether payments would have been made over time. The interrogatory answer provides none of that information. Moreover, the interrogatory answer does not identify what portion of either the 2006 proposed buyout or the 2009 proposed buyout would ultimately have gone to Griswold *personally*, as opposed to Wolf Mountain. Indeed, Griswold has not even furnished any documents related to the 2006 buyout – and he did not produce the 2009 buyout offer until August 19, 2010, long after the close of discovery.

Most significantly, to evaluate the difference between the 2006 buyout and 2009 buyout, one would need to know the *value of Wolf Mountain's property* at the respective times. Neither of the offers described in the interrogatory answer was a simple matter of a defendant paying the plaintiff a certain amount of money in exchange for a release of claims. Instead, the offers involved buyouts, meaning that in order to get the money described in each offer, Wolf Mountain would have had to convey certain property to ASC Utah. Therefore, to determine the value

of the buyout supposedly offered in 2006, one would have to know exactly what property would have been included in that proposed buyout, and how much it was worth in 2006. Similarly, to determine the value of the 2009 buyout, one would have to know what property would have been included, and how much it was worth in 2009. Griswold has not provided any of this information. And without it, it is simply not possible to determine exactly how much Griswold was actually damaged by the reduction in buyout offers between 2006 and 2009.

In short, the information Griswold provided is not enough to enable Snow Christensen to "compute" the damages Griswold himself actually (and allegedly) incurred as a result of the decrease in ASC Utah's buyout offers from 2006 to 2009. Allowing Griswold to seek these damages at trial would be improper as well.

### 3. Alleged Emotional Distress.

Finally, Griswold's interrogatory answer does not constitute a computation of emotional distress damages. Once again, Griswold gives only a round number without any breakdown for counseling bills, costs of medications, damages due to an inability to work, or any other aspect of his alleged claim. This element of damages is therefore not properly disclosed, either.

### B. Griswold has not presented any evidentiary or legal basis for his damages claims.

In addition to failing to show that he properly disclosed his damages, Griswold also fails to provide a legitimate legal or evidentiary basis for any of the elements of his damages. Snow Christensen's motion in limine should be granted for this reason as well.

### 1. Alleged Excess or Unnecessary Attorney Fees.

In its opening memorandum, Snow Christensen pointed out that Griswold lacks any basis to recover attorney fees, because, among other things, Griswold has not designated an

expert to testify that Wolf Mountain incurred excess fees as a result of improper litigation tactics; Griswold lacks a foundation to testify about fees Wolf Mountain incurred without relying on documents, which he has not produced; and Griswold cannot show a causal link between any alleged breach of loyalty or confidentiality by Snow Christensen and any allegedly excessive or improper litigation tactics. Griswold's opposition memorandum fails to overcome any of these defects.

First, Griswold has done nothing to show that he has personal knowledge of the total fees incurred by Wolf Mountain. Griswold argues that because he was a managing member of Wolf Mountain, the fees Wolf Mountain incurred in the Canyons litigation are within his personal knowledge. This argument is insufficient, however. The best Griswold could possibly show is that he knows *generally* that Wolf Mountain incurred attorney fees in connection with the Canyons litigation. It is simply inconceivable that Griswold would have personal knowledge of the precise total of the fees incurred over the four-plus years the Canyons litigation has been going on. Unless Griswold remembers the exact amount of every invoice and kept a running total in his head, any knowledge Griswold has about total fees incurred would have to come from a review of documents in Wolf Mountain's files. In addition, there is no evidence that any of these fees were actually *paid* by Wolf Mountain (or Griswold). Because Griswold has never produced any invoices or evidence of payment, he may not testify about Wolf Mountain's attorney fees, and as such this element of damages is not supported by sufficient evidence.

Second, even if Griswold could get around the personal knowledge obstacle regarding Wolf Mountain's attorney fees, Griswold still would not be in a position to testify about any of the work that the lawyers actually *did*. Further, Griswold would not be able to testify that such

work was reasonable and necessary, that the work was made necessary by improper or excessive litigation tactics by Snow Christensen, or that such tactics were caused by any alleged breach of loyalty or confidentiality. Griswold asserts that he will present "extensive testimony concerning the actions by Snow in the state court litigation, and why Griswold believes such actions illustrate the use of his confidential information." (Opp'n at 6.) What Griswold "believes," however, is not relevant. He simply is not qualified to opine whether certain litigation tactics are improper, or even unusual in the context of a multiparty multimillion dollar complex commercial lawsuit.[2] Such testimony requires a qualified expert, which Griswold has not designated. Further, Griswold obviously lacks personal knowledge of the decision-making process used by the attorneys on the Canyons cases and thus cannot testify as to the motivation or reasoning behind any action taken on the case.

The only thing supporting Griswold's claim for excess attorney fees is his own say-so. This is simply insufficient as a matter of law. Accordingly, any evidence on this aspect of Griswold's claim is inadmissible.

2.     **Alleged Reduced Settlement Value.**

Nor has Griswold shown how he could possibly introduce testimony that any alleged breach of duty by Snow Christensen caused the alleged reduction in ASC Utah's buyout offers from 2006 to 2009. Once again, this is nothing but rampant speculation on Griswold's part, unsupported by even a shred of evidence.

---

[2] Griswold's plan to discuss actions taken by Snow Christensen in the Canyons litigation also raises serious concerns under Rule 602, as Griswold was not personally involved in every step of the actual litigation of the Canyons cases. Further, Griswold has not designated any pleadings from the Canyons cases as exhibits.

Griswold's opposition argues that Griswold can provide "detailed testimony" to support this claim because Griswold is supposedly "extremely knowledgeable concerning the real estate market, the ski industry and The Canyons Ski Resort in particular, and changes in the posture of the underlying state court litigation." (Opp'n at 7.) Griswold, however, was not designated to present expert opinion testimony on these matters – or any other matters. *See* Fed. R. Civ. P. 26(a)(2)(A). Further, even if Griswold were able to testify about these matters, he still would not be able to testify about ASC Utah's executives' subjective mental processes, including the reasons why the executives, including Mr. Bistricer, offered a lower buyout price in 2009 than they did in 2006. Thus, Griswold simply cannot provide admissible, competent evidence that any reduction in the price ASC Utah was willing to pay to buy out Wolf Mountain's interests was due to the fact that Snow Christensen previously represented Griswold, or due to the use of confidential information.

3.  **Alleged Emotional Distress.**

Finally, Griswold has been unable to cite any authority that would support a claim for emotional distress damages in an instance like this. All of Griswold's claims are based on the Canyons litigation – which arose out of commercial disputes between a landlord and tenant under a long term commercial ground lease. All losses suffered by Griswold are purely economic. Thus, this case is analogous to *Aller v. Law Office of Carole C. Schrieffer*, 140 P.3d 23 (Colo. Ct. App. 2005), discussed in Snow Christensen's opening memorandum.[3]

---

[3] Griswold appears to be arguing that *Aller* does not apply because his claim is based on breach of fiduciary duty, and not negligence. The whole point of *Aller*, however, was that the damage principle that applies to claims based on negligence applies equally to claims for breach of fiduciary duty alleging breaches of the duties of loyalty and confidentiality. *See Aller*, 140 P.3d at 28.

9

Griswold's citations to Utah law are unavailing. Nothing in the *Kilpatrick* case suggests that emotional distress damages are available for an attorney's breach of fiduciary duty in a commercial context. *See Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283 (Utah Ct. App. 1996). Similarly, *Lambert v. Sine* did not involve a claim for breach of fiduciary duty, or a claim against an attorney, or even a commercial dispute – the case was based on the wrongful eviction of a tenant from an apartment. 256 P.2d 241 (Utah 1953).

In other words, Griswold has failed to cite *any* authority that would allow a recovery of emotional distress damages in this context. Any evidence of such damages is therefore legally irrelevant and inadmissible.[4]

## CONCLUSION

Griswold has failed to provide a proper "computation" of his claimed damages and the supporting documents, and he lacks admissible evidence to recover any of the three aspects of damages he claims. Accordingly, the Court should enter an order precluding all evidence and testimony regarding damages at trial.

///

///

---

[4] Griswold also argues that he "should not be forced to disclose at this time his evidence and testimony that will be presented at trial." (*See* Opp'n at 8.) Griswold is essentially arguing that he has a right to surprise Snow Christensen at trial with previously undisclosed evidence. Obviously, this argument runs counter to the whole *point* of the disclosure and production requirements of Rule 26(a) – and the discovery rules in general.

DATED: August 30, 2010.

                        ANDERSON & KARRENBERG

                        /s/ Stephen P. Horvat
                        Thomas R. Karrenberg
                        Stephen P. Horvat
                        Samantha J. Slark
                        *Counsel for Defendant*