ANDERSON & KARRENBERG
Thomas R. Karrenberg (#3726)
Stephen P. Horvat (#6249)
Samantha J. Slark (#10774)
50 West Broadway, Suite #700
Salt Lake City, Utah 84101
Telephone: (801) 534-1700
Facsimile: (801) 364-7697
tkarrenberg@aklawfirm.com
shorvat@aklawfirm.com
sslark@aklawfirm.com

***Counsel for Defendant***

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| KENNETH W. GRISWOLD,<br><br>Plaintiff,<br><br>vs.<br><br>SNOW, CHRISTENSEN & MARTINEAU,<br><br>Defendant. | **REPLY MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE PHILLIP FELDMAN**<br><br>Civil No. 2:08-cv-00197 TC |

Defendant Snow Christensen & Martineau ("Snow Christensen") submits this reply memorandum in support of its motion to exclude Plaintiff's designated expert witness, Phillip Feldman, from testifying at trial in this matter.

## ARGUMENT

### A. Griswold has not addressed the fundamental flaws of Mr. Feldman's proposed testimony.

Griswold has failed to address the fundamental flaw of Mr. Feldman's proposed testimony: that it is not *expert opinion testimony*. Instead of presenting "information and explanations" based on his expertise and thoroughly reasoned analysis, Mr. Feldman presents unsupported accusations and arguments. See Lippe v. Bairnco Corp., 288 B.R. 678, 687 (S.D.N.Y. 2003).

Griswold appears to contend that Snow Christensen's motion should be denied because "Mr. Feldman's Deposition Testimony and Expert Report Have Not Been Proffered as Evidence." (See Opp'n at 1.) Mr. Feldman's report, however, is supposed to contain a "complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Thus, Mr. Feldman's report provides the most useful guide to his proposed testimony – and amply demonstrates that his proposed testimony does not qualify as proper expert opinion testimony under Rule 702. Mr. Feldman's deposition reinforces this point.

As the proponent of expert testimony, it is Griswold's burden to show that Mr. Feldman's proffered testimony is admissible. E.g., Trugreen Companies v. Scotts Lawn Service, 508 F. Supp. 2d 937, 958 (D. Utah 2007) (Cassell, J.). Griswold has failed to point to anything in Mr. Feldman's report indicating that Mr. Feldman's proposed opinions satisfy the requirements of Rule 702. This is grounds for excluding the proposed testimony.

**B. Griswold has not provided any legitimate basis for Mr. Feldman's proposed testimony that "the file was reviewed."**

Griswold's opposition memorandum provides no justification for Mr. Feldman's proposed testimony that Mr. Lund committed a "nighttime raid" on Griswold's file at Snow Christensen – or that anyone else reviewed the file. The Court can reject Griswold's assertion that Mr. Feldman's declaration (not even his Report) "describes the series of events and facts that causes him to believe that the file was examined." (Opp'n at 2.) Even a cursory reading of the cited testimony shows that this is not the case. Most of the testimony deals with Mr. Feldman's opinion about the misspelling made in the conflicts check, not the alleged review of Griswold's file at Snow Christensen. (See Feldman Decl., Ex. C to Snow Christensen's Opening Memo. (Docket Entry 103-3), ¶¶ 5-10.) Further, the few references to any alleged review of Griswold's file are conclusory and argumentative. (See, e.g., Feldman Decl. ¶ 8 ("Snow Christensen decided to use confidential information obtainable only from Wheeler's file in their representation of ASC against Griswold's entity.").) This is not enough of a basis to satisfy Rule 702.

In addition, Mr. Feldman's testimony is inadmissible because any testimony that someone at Snow Christensen reviewed Griswold's file would not be based on Mr. Feldman's claimed expertise. Mr. Feldman does not claim to have any special expertise in determining what information an attorney used in litigating a case, or where he or she obtained that information. Nor has Griswold shown that expert testimony on that issue – even with a qualified witness – would "assist the trier of fact," as Rule 702 requires. Importantly, Mr. Feldman does not propose to offer an opinion, but rather to testify about facts, i.e., that a certain event actually occurred (that Mr. Lund raided the Griswold file) – and Mr. Feldman is not a percipient witness to that event. Moreover, as explained in Snow Christensen's opening memorandum, Rule 702 does not

allow a party to use an expert witness to restate evidence that is otherwise in the record, or to tell the jury what conclusions it should draw from that evidence. See, e.g., Highland Capital Mgmt. v. Schneider, 379 F. Supp. 2d 461, 468-69 (S.D.N.Y. 2005) ("To the extent that O'Shea is simply rehashing otherwise admissible evidence about which he has no personal knowledge, such evidence-taken on its own-is inadmissible."). Instead, if Griswold believes there is evidence in the record showing that Mr. Lund reviewed Griswold's file, he must present that evidence and make his argument to the jury. He cannot present that argument through the guise of calling an expert witness.

**C. Mr. Feldman's testimony about "informed consent" is likewise improper.**

Griswold's argument on Mr. Feldman's "informed consent" opinion misunderstands both Mr. Feldman's testimony and Snow Christensen's argument. Contrary to the position taken in Griswold's opposition, Mr. Feldman is proposing to testify that Snow Christensen was required to disclose, while the Griswold representation was "active," that "when mister big bucks comes along, we don't care who his enemies are, we're going to represent him," and also that Snow Christensen's management and ethics committees are "going to self-deal and do what's best for the firm because in addition to being a profession, the law is a business, and we want you to know that in advance." (Feldman Depo., Ex. B to Snow Christensen Opening Memo. (Docket Entry 103-2), 74:24 – 75:9.) Mr. Feldman was plainly opining that Snow Christensen had planned, even as far back as 1999-2000, to sell Griswold out if the opportunity arose. (See id. at 75:19-22 ("and they can do it without the extra baggage of blinding a client to the notion that

he'll be sold out when mister big bucks comes along, and that was not revealed").) There is absolutely no foundation for such testimony.[1]

**D. Mr. Feldman's testimony that Snow Christensen used confidential information in litigating the Canyons matters lacks foundation.**

Similarly, Griswold has failed to provide any legitimate basis to support Mr. Feldman's opinion that Snow Christensen actually used Griswold's confidential information in litigating the Canyons cases. Griswold claims that the facts supporting Mr. Feldman's opinion are set forth in his declaration, and that "to argue that an expert's opinion must be excluded because their report does not indicate that they did not consider certain possibilities is overreaching." (Opp'n at 4.) This is insufficient to render the proposed testimony admissible, however.

First, Griswold has utterly failed to explain why the Court should consider this subject proper for expert witness testimony. As Snow Christensen explained in its opening memorandum, Mr. Feldman's proposed testimony consists of nothing more than an argument by an advocate, based on the mere fact that Mr. Lund asked in the Conabee deposition whether Griswold was filing his tax returns. Such testimony is not permissible under Rule 702, because it seeks to usurp the jury's role rather than assist the jury. See, e.g., Highland Capital Mgmt., 379 F. Supp. 2d at 469 ("[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence."); see also Brainard v. American Skandia Life Assur. Co., 432 F.3d 655, 664 (6th Cir. 2005) ("[A]n expert who supplies nothing

[1] Griswold's opposition contends that informed consent should have been obtained when Snow Christensen began representing ASC Utah: "If, as Griswold and Feldman believe, Griswold was a current client of Snow when they began representing the ASC Parties in 2006, Snow would have been required to obtain informed consent at that time, not back in 2000." (Opp'n at 3.) This, however, is not what Mr. Feldman testified to in his deposition, nor has Griswold cited anything in Mr. Feldman's report in which an opinion such as this is disclosed.

but a bottom line supplies nothing of value to the judicial process."). Thus, even if Mr. Feldman *could* come up with a foundation for his opinion that certain information was used in the Canyons litigation, his opinion would be inadmissible. See Hershey v. Pacific Inv. Mgmt. Co., 697 F. Supp. 2d 945, 951 (N.D. Ill. 2010) ("To the extent that the evidence underlying Mr. Rickards' inferences is admissible, it should be presented directly to the jury.").

Second, contrary to Griswold's position, the law is clear that Mr. Feldman may *not* testify that deposition questions in the Canyons litigation were the result of viewing Griswold's file without exploring obvious alternative explanations for those questions. As a general matter, when an expert testifies about the cause of an event based on circumstantial evidence, the expert must explain why his or her proffered cause is the most likely, and why alternative explanations are less so. See, e.g., Bitler v. A.O. Smith Corp., 400 F.3d 1227, 1238 (10th Cir. 2005) ("But more than mere possibility, an inference to the best explanation for the cause of an accident must eliminate other possible sources as highly improbable, and must demonstrate that the cause identified is highly probable.").

Thus, for example, this Court (Judge Cassell) has held that expert testimony on causation was inadmissible because the expert failed to consider alternatives. See Trugreen, 508 F. Supp. 2d at 959-60. In Trugreen, the plaintiffs sued a number of former employees who had gone to work for plaintiffs' competitor, in violation of various non-compete and non-solicitation agreements. The plaintiffs' expert submitted a report opining that the new employer's profits represented damages to the plaintiffs because those profits were essentially stolen away from the plaintiffs. The Court granted the defendants' motion to strike the report and proffered testimony, holding that even though the expert was qualified to testify, his opinions "are not sufficiently

reliable to survive scrutiny under Rule 702 of the Federal Rules of Evidence." Id. at 959. In addition to finding that the expert had failed to provide a basis for the assumption that all of the competitors' increase in profits was attributable to the employees who jumped ship, the Court rejected the proposed testimony on the ground that "the report does not seriously contend with potentially confounding causes of revenue gains and losses." Id. at 959-60; see also Lippe, 288 B.R. at 686 ("Expert testimony is inadmissible if it makes no effort to account for major variables, such as, in a discrimination case, possible nondiscriminatory explanations for statistical disparities."); Hershey, 697 F. Supp. 2d at 955 (rejecting testimony on loss causation: "Inherent in this is the requirement that the expert separate the alleged unlawful conduct from other possible significant causes.").

These principles apply here. Mr. Feldman opines that the reason Mr. Lund was able to ask Mr. Conabee about whether Griswold's tax returns were being filed was because Mr. Lund obtained confidential information from Griswold's file at Snow Christensen. But there are other alternative explanations, such as Mr. Lund's ability to obtain that same information through publicly available sources. Further, as the plaintiff, Griswold has the burden of proving by a preponderance of the evidence that Snow Christensen actually disclosed or actually misused confidential information it obtained from Griswold. Mere speculation or testimony about possibilities is not enough. Mr. Feldman's failure to explain why it was more likely that information came from Griswold's file as opposed to public records provides yet another reason to exclude his proposed testimony.

**E. Mr. Feldman's testimony about Snow Christensen's alleged decision to "drop" Griswold in favor of ASC Utah is also improper.**

Griswold also misperceives Snow Christensen's objection to Mr. Feldman's proffered testimony about Snow Christensen's purported decision to terminate its relationship with Griswold when the chance arose to represent ASC Utah. Contrary to Griswold's suggestion, Snow Christensen's objection to the proposed testimony does not assume that its representation of Griswold "had to end in 2000." (Opp'n at 4.) Rather, Snow Christensen's objection is that Mr. Feldman's opinion is based on assumptions that lack any basis whatsoever. Mr. Feldman opines that Snow Christensen made a subjective choice in 2007 to discontinue an attorney-client relationship with Griswold, because Snow Christensen wanted instead to continue to represent ASC Utah, its "cash cow." (See Feldman Report at 23:19 – 24:24.) In other words, Mr. Feldman assumes that Snow Christensen *subjectively believed* in 2007 that it was still in an ongoing attorney-client relationship with Griswold, and then deliberately made a choice to terminate that representation because ASC Utah would be more lucrative.

Mr. Feldman's testimony is improper because a party's subjective beliefs, intent, or motivations are not a proper subject of expert witness testimony. See In re Rezulin Prods. Liab. Litig., 309 F. Supp. 2d 531, 545-47 (S.D.N.Y. 2004); Highland Capital, 379 F. Supp. 2d at 468-70; Hershey, 697 F. Supp. 2d at 949-51. Further, there is not a shred of evidence to support Mr. Feldman's opinion that as of 2007, *anyone* at Snow Christensen subjectively believed that the firm was still representing Griswold – seven years after the last time Snow Christensen even

communicated with Griswold. Instead, this opinion is pure speculation and fantasy on Mr. Feldman's part, and it is not admissible under Rule 702.[2]

**F. Mr. Feldman's testimony about causation is entirely speculative.**

In its opening memorandum, Snow Christensen explained that Mr. Feldman lacked any basis to testify that Snow Christensen's alleged misuse of confidential information led to the "long, seemingly unending lawsuits between Wolf and ASC." (Snow Christensen Opening Mem. at 10 (quoting Feldman Report at 24:2-4).) Mr. Feldman further opines that ASC Utah is trying to gain an unfair advantage in the Canyons litigation by "papering the impecunious party," i.e., Wolf Mountain. Mr. Feldman has admitted, however, that he did not review the records of the Canyons litigation and lacks any evidence as to Wolf Mountain's financial situation and whether Wolf Mountain is paying its attorneys.

In response, Griswold claims that Mr. Feldman will "present expert opinion only on the issue of proximate cause," not but-for cause. (Opp'n at 5.) Griswold does not explain what the difference would be, however. Further, Griswold fails to cite anything in Mr. Feldman's report presenting an opinion about proximate cause that is distinguishable from the opinions addressed in Snow Christensen's motion. Indeed, if the passages cited in Snow Christensen's opening memorandum do not present Mr. Feldman's opinion on causation, then Snow Christensen is at a loss to figure out what that opinion might be. Any opinion on proximate cause would therefore be presented for the first time at trial, which is impermissible under Rule 26(a)(2) and 37(c).

[2] The evidence is undisputed that Mr. Wheeler did not even know that Snow Christensen had begun the ASC representation, and none of the attorneys involved in the ASC matter knew that Mr. Wheeler had previously represented Griswold.

Regardless of how Griswold chooses to describe it, the fact remains that he has not shown that Mr. Feldman is either qualified to present an opinion on causation, or that such an opinion has the necessary factual and logical foundation, or that such an opinion was properly disclosed in his report. Accordingly, testimony on this issue is inadmissible as well.

## CONCLUSION

Griswold has not established that any of the proposed testimony of Mr. Feldman would be admissible under Rule 702. Snow Christensen therefore respectfully reiterates its request that the Court exclude Mr. Feldman from testifying at trial.

DATED: September 2, 2010.

ANDERSON & KARRENBERG

/s/ Stephen P. Horvat
Thomas R. Karrenberg
Stephen P. Horvat
Samantha J. Slark
**Counsel for Defendant**